IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE

| | |
|---|---|
| LYNDA RITZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, AND DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT ERIE INSURANCE EXCHANGE;<br><br>Plaintiff,<br><br>vs.<br><br>ERIE INDEMNITY COMPANY, J. RALPH BORNEMAN JR., TERRENCE W. CAVANAUGH, EUGENE C. CONNELL, LUANN DATESH, JONATHAN HIRT HAGEN, THOMAS B. HAGEN, C. SCOTT HARTZ, BRIAN A. HUDSON SR., CLAUDE C. LILLY III, GEORGE R. LUCORE, THOMAS W. PALMER, MARTIN P. SHEFFIELD, RICHARD L. STOVER, ELIZABETH A. HIRT VORSHECK, ROBERT C. WILBURN, ERIE INSURANCE EXCHANGE, NOMINAL DEFENDANT;<br><br>Defendants, | 1:17-CV-00340-CRE |

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, Chief United States Magistrate Judge.

### I.   INTRODUCTION

Plaintiff Lynda Ritz brought this putative class and derivative action against Erie Indemnity Company and its Board of Directors on December 28, 2017. Presently for disposition are the following:

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

1

(1) Defendant Elizabeth Hirt Vorsheck's motion to dismiss (ECF No. 46);

(2) Defendant Ralph Borneman Jr., Terrence W. Cavanaugh, Eugene C. Connell, Luann Datesh, C. Scott Hartz, Brian A. Hudson, Sr., Claude C. Lilly, III, George R. Lucore, Thomas W. Palmer, Martin P. Sheffield, Richard L. Stover and Robert C. Wilburn's motion to dismiss (ECF No. 48);

(3) Thomas B. Hagen and Jonathan Hirt Hagen's motion to dismiss (ECF No. 51); and

(4) Erie Indemnity Company's ("Indemnity") motion to dismiss (ECF No. 52).[2]

The motions are fully briefed and ripe for disposition. For the reasons the follow, the motions are granted and Plaintiff's complaint is dismissed with prejudice because it is barred by claim preclusion, or *res judicata*.

## II. BACKGROUND

While the Defendants moved to dismiss Plaintiff's complaint on myriad grounds, because the complaint is barred by the doctrine of claim preclusion, the court will only recount facts applicable to that analysis.

Erie Insurance Exchange ("Exchange") is a subscriber-owned reciprocal insurance exchange organized under Pennsylvania law. The Exchange is not an incorporated entity and has no officers or employees and its business affairs are managed by Erie Indemnity Company ("Indemnity") under a "Subscriber's Agreement." Each subscriber executes this agreement which appoints Indemnity as their attorney-in-fact to manage and conduct the business affairs of the Exchange.[3] Indemnity is a publicly-traded Pennsylvania corporation overseen by a Board of Directors. The Subscriber's Agreement provides that the Indemnity can retain up to 25% of all

---

[2] The individually named defendants are members of Indemnity's Board of Directors during the time in question and will be collectively referred to as the "Board."

[3] According to Ritz, "[e]very Subscriber of Exchange signs an identical Subscriber's Agreement Drafted by Indemnity[,]" and the "material language in the Subscriber's Agreement has remained unchanged since 1975." Ritz Compl. (1:17-cv-340 ECF No. 1) at ¶ 39.

2

insurance premiums written or assumed by the Exchange as compensation for serving in this capacity. This percentage is referred to as Indemnity's "Management Fee."

Plaintiff Linda Ritz is a subscriber of the Exchange and putative class representative who seeks to recover damages for herself and the putative class of subscribers or policyholders of the Exchange due to Indemnity and the Board's alleged breach of fiduciary duty for taking excessive management fees. It is undisputed that Indemnity never withheld any amount exceeding 25%, but rather Ritz argues that the breach of fiduciary duty is based upon Indemnity "taking the maximum 25% Management Fee year after year without valid grounds" since 2007 to present. Ritz Compl. (1:17-cv-340 ECF No. 1) at ¶¶ 53, 54.

However, this is not the subscribers' first attempt to hold Indemnity and its Board liable for allegedly violating the 25% compensation cap under the Subscriber's Agreement from 2007 to present. In *Beltz v. Erie Indem. Co.*, 279 F. Supp. 3d 569 (W.D. Pa. 2017), *aff'd*, 733 Fed. Appx. 595 (3d Cir. 2018) (unpublished), *reh'g denied* (June 14, 2018) ("*Beltz II*"), a putative class of subscribers, represented by the same counsel that represents Ritz here, commenced a class action against Indemnity and its Board for allegedly breaching its fiduciary duties for misappropriating service charges and additional fees under the Subscriber's Agreement's provision that Indemnity could only withhold 25% of the premiums for its Management Fee. Specifically, service charges were levied on subscribers who chose to pay their premiums in installments rather than in a lump sum, and the *Beltz II* plaintiffs alleged that beginning in 1999, Indemnity's Board approved taking all of the service charges revenue instead of keeping the charges in the Exchange. The *Beltz II* subscribers putative class alleged that this breached the Subscriber's Agreement's 25% compensation cap. Additionally, the subscriber putative class in *Beltz II* alleged that beginning in 2008, Indemnity and its Board transferred all revenue from "additional fees" which were collected

from subscribers for checks or other payments returned unpaid, cancellation notices and charges for reinstatement of a policy following a lapse in coverage due to non-payment to Indemnity. The putative subscribers class asserted four claims against Indemnity and its Board for its conduct under Pennsylvania law: breach of contract, breach of fiduciary, conversion and unjust enrichment. The district court dismissed the complaint and held, *inter alia*, that the Subscriber's Agreement provision which allowed Indemnity and its Board to allocate up to 25% of the premiums to Indemnity did "not govern the separate and additional charges at issue." *Beltz v. Erie Indem. Co.*, 279 F. Supp. 3d 569, 580-81 (W.D. Pa. 2017), *aff'd*, 733 Fed. Appx. 595 (3d Cir. 2018) (unpublished), *reh'g denied* (June 14, 2018). The Court of Appeals for the Third Circuit later affirmed the district court's decision and denied rehearing. *Beltz v. Erie Indem. Co.*, 733 Fed. Appx. 595, 597 (3d Cir. 2018) (unpublished), *reh'g denied* (June 14, 2018).

After the district court dismissed the *Beltz II* complaint and the putative subscribers class filed their appeal, Ritz filed the instant class action and derivative lawsuit against Indemnity and its Board. The crux of Ritz's present lawsuit broadly alleges that Indemnity and its Board unreasonably withheld the highest amount permitted under the Subscriber's Agreement – *i.e.*, 25% – without good cause for doing so and she argues that doing so disregards Indemnity and its Board's fiduciary duties to the subscribers and breaches the implied duty of good faith and fair dealing. Ritz asserts three claims under Pennsylvania law: breach of fiduciary duty, breach of contract and implied covenant of good faith and fair dealing, and unjust enrichment. For the reasons that follow, the court finds that these claims are barred by claim preclusion.

### III. STANDARD OF REVIEW

   a. Federal Rule of Civil Procedure 12(b)(6)

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled.

4

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This " 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). In short, a motion to dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him to relief. *Twombly*, 550 U.S. at 563 n.8.

Courts generally consider the allegations of the complaint, attached exhibits, and matters

of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally can consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

While claim preclusion is an affirmative defense, it may be presented in a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if it is apparent from the face of the complaint that it applies. *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Because the analysis here is based solely upon matters of public record, it is proper for the court to consider it at this procedural juncture.

IV. **DISCUSSION**

    a. <u>Claim Preclusion[4]</u>

Claim preclusion "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding." *Blunt v. Lower Merion Sch. Dist.*,

---

[4] While the defendants seek to dismiss Plaintiff's complaint under the doctrine of res judicata, because this doctrine "is often analyzed . . . to consist of two preclusion concepts: 'issue preclusion' and "claim preclusion[,]' " and because the defendants more specifically seek the court to apply the "claim preclusion" prong of res judicata, the court will use this terminology throughout this decision. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, n. 1, 104 S.Ct. 892, n. 1, 79 L.Ed.2d 56 (1984).

6

767 F.3d 247, 276 (3d Cir. 2014). Claim preclusion applies where there has been (1) a final judgment on the merits in an earlier proceeding that involved (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). In determining whether these elements have been met, a court does "not apply this conceptual test mechanically," but rather should focus "on the central purpose of the doctrine, [which is] to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010) (internal quotations and citations omitted). In so doing, "piecemeal litigation" is avoided and the court conserves scare "judicial resources." *Id*. The underlying purpose of claim preclusion is to "relieve the parties of the cost and vexation of multiple lawsuits, . . . prevent[] inconsistent decisions, [and] encourage reliance on adjudication." *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (citations omitted). Importantly here, claim preclusion "bars not only claims that were brought in the previous action, but also claims that could have been brought." *Blunt*, 767 F.3d at 276. "This analysis does not depend on the specific legal theory invoked, but rather [on] the essential similarity of the underlying events giving rise to the various legal claims." *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (internal citations and quotations omitted).

        *i.*     *Final Judgment on the Merits*

In the instant matter, there has been a final decision on the merits in the *Beltz II* case as the district court dismissed the complaint with prejudice at the motion to dismiss stage, which was ultimately affirmed by the Court of Appeals for the Third Circuit, and therefore the first element of claim preclusion is met. *See U.S. v. 5 Unlabeled Boxes*, 572 F.3d 169, 174-75 (3d Cir. 2009) (a judgment on the merits from the court of appeals is a final judgment on the merits for claim preclusion); *Adefumi v. City of Philadelphia*, 445 Fed. Appx. 610 (3d Cir. 2011) (unpublished) (finding that a district court granting a motion to dismiss is "easily" satisfies the requirement of "a final judgment on the merits" for claim preclusion purposes).

    ii.  *Same Cause of Action*

Next, the court finds that the "same cause of action" element has been met. In determining what constitutes the "same cause of action" for claim preclusion to apply, the court should take a "broad view." *Davis v. Wells Fargo*, 824 F.3d 333, 342 (3d Cir. 2016). If the "underlying events giving rise to the various legal claims" are "essentially similar," then it is likely that the claims meet the "same cause of action" element for claim preclusion purposes. *Blunt,* 767 F.3d at 277. This requires a plaintiff to "present in one suit all the claims for relief that he [or she] may have arising out of the same transaction or occurrence[,]" *U.S. v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984), or out of a "series of connected transactions." *Elkadrawy,* 584 F.3d at 174. Simply proposing "a different theory of recovery based upon the same liability creating conduct of the defendant which gave rise to the first action[]" does not entitle the plaintiff "to another day

8

in court[.]" *Charter Oak Fire Ins. Co. v. Sumitomo Marine and Fire Ins. Co., Ltd.*, 750 F.2d 267, 270 (3d Cir. 1984) (internal quotation marks and citations omitted). Again, it must be emphasized that claim preclusion bars not only claims that were actually brought in the previous action, but also those claims that "could have been brought." *Blunt*, 767 F.3d at 276.

In the instant case, the same cause of action element is met, as the underlying events giving rise to the action in *Beltz II* arises out of the same transactions or occurrences to those in the instant matter. Moreover, it is obvious that the claims asserted by Ritz in this action could have been brought in the *Beltz II* action, because the *Beltz II* plaintiffs specifically alleged the exact conduct complained of by Ritz in this case – that Indemnity and its Board took excessive management fees under the Subscriber's Agreement.

Here, both cases detail an alleged scheme by Indemnity and its Board to favor the shareholders over the subscribers by allegedly violating the 25% compensation cap mandated by the Subscriber's Agreement. The *Beltz II* plaintiffs narrowly tailored their causes of action by focusing on whether it was a breach for Indemnity and its Board to keep extra-contractual payments which exceeded the 25% compensation cap, while Ritz broadly alleges that Indemnity and the Board exceeded the 25% compensation cap by unreasonably taking the maximum allowable percentage. Both cases allege that this scheme began at the same time, that it breaches the same provision of an identical Subscriber's Agreement and allegedly caused damages to the

9

same putative class.[5] Both Ritz and the Beltz II plaintiffs allege that Indemnity abused its attorney-in-fact position and the Board members abused their positions of power to misappropriate management fees to favor Indemnity's shareholders by deliberately breaching the same contractual provision – the compensation cap in the Subscriber's Agreement – and seek that those funds be returned to the Exchange as damages for the alleged breach. Ritz simply propounds a broader theory of recovery than that sought by the *Beltz II* plaintiffs. Ritz's complaint does not include any new material facts that occurred after the filing of the *Beltz II* complaint such that the *Beltz II* plaintiffs could not have known about the theory of recovery touted by Ritz here. Because proposing a different theory of recovery based upon the same liability causing conduct does not entitle a plaintiff to another proverbial bite at the apple, Ritz's complaint is claim precluded.[6]

What further warrants a finding that Ritz's cause of action could have been brought by the *Beltz II* plaintiffs is that the *Beltz II* plaintiffs expressly included the conduct complained of by Ritz in their own complaint. Specifically, the *Beltz II* plaintiffs alleged in pertinent part that:

---

[5] The *Beltz II* complaint is substantively indistinguishable to the Ritz complaint, with the exception that the Ritz complaint omits any reference to a breach by Indemnity's withholding additional fees and service charges. *Compare* Ritz Compl. (1:17-cv-340 ECF No. 1) *with Beltz II* Compl. (1:16-cv-179 ECF No. 1).

[6] Ritz argues, without any citation to authority, that the court should consider the fact that Indemnity submitted separate material event forms on Form 8-K to the Security and Exchange Commission for each lawsuit filed by Ritz's counsel. *See* Pl.'s Resp. (ECF No. 61) at 28-31. How Indemnity characterized separate lawsuits to the SEC in regulatory documents is immaterial, as the standard for claim preclusion purposes is whether the claims were brought or capable of being brought in the same lawsuit, not how a party may have characterized a lawsuit to a regulatory agency. Tellingly, Ritz does not provide any explanation as to why her claims could not have been brought in the *Beltz II* action.

> since at least 2007, **Indemnity has retained the maximum amount of 25% allowed by the Subscriber's Agreement of all premiums written or assumed by Exchange**. Indemnity has not disclosed any rationale or justification that it is entitled to the entire 25%, rather, Indemnity has repeatedly **taken the full amount allowable pursuant to the Subscriber's Agreement**. The value for the services rendered by Indemnity, as attorney-in-fact, must be reasonable, and any amount taken in excess of that is a breach of fiduciary duty.

*Beltz II* Compl. (1:16-cv-179 ECF No. 1) at ¶ 84 (emphasis added). By comparison, Ritz alleges that since at least 2007, Indemnity

> **has retained the maximum amount of Management Fees allowed by the Subscriber's Agreement – 25% of all premiums written or assumed by the Exchange** – as compensation for services performed pursuant to the Subscriber's Agreement. . . . Indemnity and the Board have breached their fiduciary obligations to Exchange and the Subscribers and have abused their position of trust by charging and keeping excessive Management Fees.

Ritz Compl. (1:17-cv-340 ECF No. 1) at ¶ 43-44 (emphasis added).

Thus, the *Beltz II* plaintiffs not only had actual knowledge of their breach of fiduciary duty claim for the retention of the maximum 25% of management fees, they included those facts (and the supporting cause of action for breach of fiduciary duty) in their complaint. Thus, the *Beltz II* plaintiffs were capable of including Ritz's cause of action for the alleged excessive retention of management fees in its complaint, were well aware of the operative facts underlying the Ritz complaint, and *actually included* these facts in their complaint. Accordingly, the "same cause of action" element for claim preclusion is met.

### iii. Same Parties or Privies

Lastly, the court must determine whether the *Beltz II* case involved the same parties or their privies. "Privity 'is merely a word used to say that the relationship between one who is a party on

11

the record and another is close enough to include that other within the res judicata.' " *Marran v. Marran*, 376 F.3d 143, 151 (3d Cir. 2004) (quoting *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (1990)). "One relationship long held to fall within the concept of privity is that between a nonparty and a party who acts as the nonparty's representative." *U.S. Steel Corp.*, 921 F.2d at 493 (citations omitted).

In the instant matter, the majority of the Defendants named in the *Beltz II* case are identical to the Defendants named in this case.[7] The only two defendants who were not parties to the *Beltz II* action were Brian A. Hudson, Sr. and Eugene C. Connell. Both of these Defendants have served on Indemnity's Board of Directors since 2017 and are included in this suit as fiduciaries for the Class and Exchange as their position on the Board. *See* Ritz Compl. (ECF No. 1) at ¶¶ 15, 20. Accordingly, because Indemnity and its Board of Directors were named in the prior action, Defendants Brian A. Hudson, Sr. and Eugene C. Connell are in privity with both Indemnity and its Board of Directors for purposes of claim preclusion.[8] *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (finding that directors, officers, employees and attorneys of a bank who were not named in the first action were nonetheless in privity with the bank for claim

---

[7] Specifically, the following Defendants were named in both the Beltz II and the Ritz case: Erie Indemnity Company, J. Ralph Borneman, Jr., Terrence W. Cavanaugh, Luann Datesh, Jonathan Hirt Hagen, Thomas B. Hagen, C. Scott Hartz, Claude C. Lilly, III, George Lucore, Thomas W. Palmer, Martin P. Sheffield, Richard L. Stover, Elizabeth A. Hirt Vorsheck, Robert C. Wilburn and Erie Insurance Exchange as a nominal defendant.

[8] Notably, Plaintiff does not contest privity of the Defendants.

preclusion purposes); *Brooks-McCollum v. Emerald Ridge Serv. Corp.*, 563 Fed. Appx. 144, 146 (3d Cir. 2014) (unpublished) (finding that the board and the corporation were the same parties or privies for claim preclusion purposes) (citing Restatement (Second) of Judgments § 59, comment b).

Next, the court must determine if the plaintiffs in *Beltz II* and Ritz are in privity for claim preclusion purposes. Privity has "traditionally been understood as referring to the existence of a substantive legal relationship, such as by contract, from which it was deemed appropriate to bind one of the contracting parties to the results of the other party's participation in litigation." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 311 (3d Cir. 2009). A "substantive legal relationship" essentially "refers to one in which 'the parties to the first suit are someone accountable to nonparties who file a subsequent suit raising identical issues.'" *McLaughlin v. Bd. of Trustees of Natl. Elevator Indus. Health Benefit Plan*, 686 Fed. Appx. 118, 122 (3d Cir. 2017) (unpublished) (citing *Pelt v. Utah*, 539 F.3d 1271, 1290 (10th Cir. 2008)). *See also Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008) (outlining traditional nonparty preclusion categories). Privity may be found in "a variety of fiduciary, contractual or property relationship[s] between current and prior litigants." *McLaughlin*, 686 Fed. Appx. at 122 (quoting *Pelt*, 539 F.3d at 1290).

Here, the *Beltz II* plaintiffs and Ritz are in privity with each other, as although Ritz was not a named party to the *Beltz II* action, their substantive legal relationship meets this criteria. The

*Beltz II* plaintiffs and Ritz are all cosigners to the same Subscriber's Agreement at issue. It is undisputed that the Subscriber's Agreement appoints Indemnity, through its Board, as the Exchange's attorney-in-fact, and this Subscriber's Agreement creates the reciprocal insurance exchange. In other words, the *Beltz II* plaintiffs and Ritz are co-beneficiaries of and cosignatories to the same contract that obligates Indemnity to provide the management services for the Exchange, and the nature of this relationship creates privity for claim preclusion purposes. *See* Restatement (Second) of Judgments § 53 (1982) ("A judgment in an action by one obligee of an obligation . . . owed to joint obligees precludes a subsequent action by any other oblige of the obligation."); *Ferris v. Cuevas*, 118 F.3d 122, 130 (2d Cir. 1997) ("where one party brings an action to enforce jointly held rights without joining as plaintiffs those persons who hold the rights with him, res judicata bars a subsequent action on the same claim by those joint right-holders who were not parties to the original action."). S*ee generally Scherer v. Wiles*, 2:12-CV-1101, 2015 WL 4512393, at *15 (S.D. Ohio July 24, 2015), *aff'd*, 659 Fed. Appx. 349 (6th Cir. 2016) (unpublished) (applying Ohio law and finding that a co-beneficiary with common interests in the outcome of the litigation were in privity for claim preclusion).

Ritz argues that privity does not exist because no class had been certified in Beltz II prior to judgment being entered.[9] While Ritz is correct that no class had been certified prior to judgment

---

[9] Ritz relegated this argument to a footnote.

being entered, privity exists by virtue of the contractual relationship between the *Beltz II* plaintiffs and Ritz, and not by virtue of the certification of the putative class. Accordingly, privity exists between the *Beltz II* plaintiffs and Ritz for claim preclusion purposes.

## V. CONCLUSION

Based on the foregoing, Plaintiff's claims are barred by claim preclusion and her complaint is dismissed with prejudice. An appropriate Order follows.

DATED this 4th day of February, 2019.

BY THE COURT:

s/Cynthia Reed Eddy
Chief United States Magistrate Judge